UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:12-CV-73-F

| JEFFERY A. TRUEMAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) | **ORDER** |
| | ) |
| UNITED STATES OF AMERICA, et al. | ) |
| | ) |
| Defendants. | ) |

This matter is before the court on the Motion to Dismiss [DE-41] filed by the United States

(also, "the Government"), the Motion to Amend/Correct Amended Complaint [DE-49] filed by the

Plaintiff, and the "Request for Expedited Cushman-Due Process Hearing" [DE-55] filed by Plaintiff.

For the reasons stated more fully below, the Motion to Dismiss [DE-41] and Motion to Amend [DE-

49] are ALLOWED, and the Request for Hearing [DE-55] is DENIED.

**I. PROCEDURAL HISTORY**

On March 27, 2012, proceeding pro se, Plaintiff Jeffery Trueman ("Trueman" or "Plaintiff")

filed an application to proceed *in forma pauperis* [DE-1]. In an order filed on March 29, 2012 [DE-

3], United States Magistrate Judge William A. Webb allowed Plaintiff's application and directed the

Clerk of Court to file the Complaint [DE-4]. On April 17, 2012, Plaintiff filed a "Notice of Motion

of Motion for Expedited Hearing to Restore the Plaintiff's Feres Doctrine Mandated (FDM) Pain

Management Program (PMP) and Successful Treatment Plan to its Previous Status Prior to the

Involvement of Defendant Physician Assistant Troyon" [DE-9].

In the Original Complaint, Plaintiff alleged he served in the United States Navy from 1982

until his honorable discharge in 1994. Compl. [DE-4] ¶¶ 1, 3. He receives medical care from the

Department of Veterans Affairs ("VA"). In 2006, during his treatment by the VA, he received a recommendation for a "Pain Management Program" which included both acupuncture treatment and daily prescribed pain medication. Compl. ¶¶ 3; 21. On February 28, 2012, Plaintiff met with Defendant Sharon F. Troyon, his new primary care provider and a physician assistant with the VA. Plaintiff alleges Troyon did not authorize acupuncture treatment, and instructed Plaintiff to wean off his pain medication within a five-day period. Compl. ¶¶ 23-24. He alleged Troyon "has a dislike in prescribing pain medication to Veterans" and that he has since been "abandoned" by the VA. Compl. ¶ 3. He asserted claims under the Federal Tort Claims Act ("FTCA") alleging, *inter alia*, medical malpractice, and named the following as Defendants: "United States of America, Department of Veterans Affairs (VA) Wilmington North Carolina Outpatient Clinic (WVAOPC), and Physician Assistant Sharon F. Tryon and WVAOPC Practice Manager Charles E. Best, Jr." Compl. (Caption).

On April 17, 2012, Plaintiff filed a "Notice of Motion & Motion for Expedited Hearing to Restore the Plaintiff's Feres Doctrine Mandated (FDM) Pain Management Program (PMP) and Successful Treatment Plan to its Previous Status Prior to the Involvement of Defendant Physician Assistant Troyon" [DE-9]. Therein, Plaintiff requested an expedited hearing and sought declaratory and injunctive relief. Specifically, he sought "a declaration that the medically unsound termination of his 'Pain Management Program (PMP)' by Defendant [Troyon] was arbitrary, premature, and medically ill-advised due to the totality of his . . ." health history. Notice [DE-4] at p.2. He asked the court to, *inter alia*, order Defendants to reinstate his previous Pain Management Program, including prescriptions for pain medication. *Id.* He asserted that he would run out of his pain medication, hydrocodone, on or before April 18, or 20, 2012, and that his cessation of taking hydrocodone would "present real danger to his abstinence from alcohol" and would aggravate his

2

various mental and physical health issues. Notice [DE-4] at p. 4.

In an Order filed on April 24, 2012, the court construed the Notice [DE-4] to be both a motion for a temporary restraining order and a motion for preliminary injunction. The court denied Plaintiff's request for a temporary restraining order and/or preliminary injunction, finding that Plaintiff had failed to meet his burden of proof. Specifically, the court noted that it may grant a temporary restraining order or a preliminary injunction only if the moving party demonstrates that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest," *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008), and that Plaintiff had not established these requirements. *See* April 24, 2012 Order [DE-12].

On May 8, 2012, Plaintiff filed a Motion to Amend Original Complaint [DE-16]. Defendant the United States filed a response [DE-17] to the Motion to Amend, wherein the United States took no position on the filing of an Amended Complaint, but objected to Plaintiff's suggestion that the court rule on whether any claims asserted in the unseen Amended Complaint "relate back" to other claims or toll prior claims asserted by Plaintiff under the FTCA. Defendant also filed a Motion for Extension of Time to File Responsive Pleadings [DE-18] seeking sixty days to file a response to the Original Complaint, or if the court allowed Plaintiff to file an Amended Complaint, sixty days to file a responsive pleading to the Amended Complaint.

Around this same time, on May 17, 2012, Plaintiff apparently filed an administrative tort claim under the FTCA, alleging medical malpractice by the VA beginning in February 2012, and claiming that his benefits had been wrongfully denied since 1994. *See* FTCA Claim [DE-42-1]. His claim was denied by a letter from the VA mailed on August 14, 2012. *See* August 14, 2012 Letter [DE-42-2].

3

Thereafter, on December 14, 2012, Plaintiff filed the Petition for Preliminary Injunction [DE-26], wherein the Plaintiff asked the court to, *inter alia*, compel the Department of Veterans Affairs "to fee base all the [Plaintiff's] medical care for civilian outpatient treatment in the interest of justice." Petition for Preliminary Injunction [DE-26] p. 10. Defendant the United States opposed the motion for a variety of reasons [DE-27].

In an Order filed on January 22, 2013 [DE-29], the undersigned allowed Plaintiff's Motion to Amend the Complaint [DE-16], noting that Plaintiff did not need court approval to file an amended complaint as of right. The court specifically noted, however, that it was not ruling on issues relating to "relation back" or tolling of any claims. The court ordered that Plaintiff was to file his amended complaint on or before February 11, 2013. The court also ordered that the Defendant United States was to file a responsive pleading within sixty (60) days of February 11, 2013, or when Plaintiff filed the Amended Complaint, whichever was earlier.

Plaintiff filed the Amended Complaint on February 8, 2013 [DE-30]. Plaintiff specifically titled the Amended Complaint as follows:

First Amended Complaint (AC) for Declaratory, Injunctive, and Damage Relief under the Feres Doctrine Rule of Law (FD-ROL)–Incident to Military Service (ITMS)–No-Fault/Non-Adversarial (NFNA)–Second Rationale (SR)(FD-ROL-ITMS-NFNA-SR) Holding of the Supreme Court of the United States of America (SCOUS) on December 4, 1950 & the Difiance [sic] of Defendant Department of Veterans Affairs (DVA) to Honor the SCOUS–FD-ROL-NFNA-SR Mandate (FDM)(1950) Giving Rise to the Violations of Plaintiff's Federal Due Process and Property Rights Under the Laws of DVA-Compensation & Pension (C&P) Statutory System and for Other Purposes in the Interest of Substantial Justice Under the FD-ROL Exemption to the United States Constitution (U.S. Const.) (1789), Bill of Rights (BORs)(1791), and Federal Tort Claims Act (FTCA (1946).

Amended Compl. [DE-30]. He named the following as Defendants:

12. Defendant United States of America (USA), and its subordinate agency, agents, officials of the DVA–Washington, D.C., and the DVA-North Carolina led and administered by Barack H. Obama II, current President of the United States and his

4

Secretary of DVA Eric Shineski.

13. Defendant Peebles MD, Baton Rouge VAOPC, Baton Rouge, LA (VAOPC-BRLA).

14. Defendant Psychiatrist Bobby Simpson, VAOPC–BRLA.

15. Defendant Psychiatrist Kay Young, DVA Medical Center, White City, OR.

16. Defendant Meena Gulati MD., DVA Medical Center, Atlanta, GA (VAMC-ALTGA).

17. Defendant Psychiatrist Hsu, VAMC-ALTGA-VAOPC East Point, GA.

18. Defendant Nurse Practitioner Wendy Thornton, DVAOPC Macon, GA.

19. Defendant VA Medical Center Fayetteville, NC (VAMC-FNC) Director Elizabeth Goolsby.

20. Defendant Nurse Practitioner Yee Simmons, VAMC-FNC.

21. Defendant Sharon F. Troyon, physician assistant and employee of Defendant VA-Outpatient Clinic, Wilmington, NC (VAOPC-WNC).

22. Defendant Charles E. Best, Jr., DVA provider manager, VAOPC-WNC.

23. Defendant Warren V. Hsu MD., VAOPC-WNC.

24. Unknown Defendant VAMCFNC IRIS Manger [sic], VAMC-FNC.

25. Unknown DVA Patient Advocate Manger [sic], VAMC-FNC.

26. Unknown DVA Freedom of Information/Privacy Act (FOIA/PA) Officer, VAMC-FNC.

27. Defendant Bharatkumar Thakkar, MD, VAMC-FNC.

28. Defendant VAMC Salem Virginia Fee Base Manager.

29. Defendant VA–Office on Inspector General (VAIG) Hotline, Washington, D>C.

30. Defendant Steve [Last Name Unknown (LNU)], Front Desk Cler, W-VAOPC.

31. Unknown Supervisor, VA Mid-Atlantic Health (VISN 6) 300 W. Morgan St. Suite 700 Durham, NC 27701.

32. Defendant K. Pfanzelter, Manager, VA Benefits Administration (VBA) Regional Office (VARO), Winston-Salem, NC (VBA?RO-WS).

Amended Compl. [DE-30]. The Amended Complaint alleged ten causes of action.

The same day Plaintiff filed the Amended Complaint, he also filed an "Acknowledgement

of Service" [DE-32], wherein he asserts that he

> properly served Defendants USA, et al., the attached documents:
> 1. Plaintiff's First Amended Complaint & Certification dated February 7, 2013;
> 2. Motion to Correct Caption of Case and Plaintiff's home address;
> 3. Request for Waiver of Service under the provisions of Fed.R.Civ.P. 4(d) and self-addressed stamped envelope for return of waiver . . .

by mailing the aforementioned documents to the United States Attorney for the Eastern District of

North Carolina.

5

On March 1, 2013, Defendant United States filed a Motion to Dismiss Amended Complaint for Violation of Rule 8 or, in the Alternative, Motion for More Definite Statement Pursuant to Rule 12(e), and Motion to Stay Responsive Pleading Until After Entry of Intelligible Second Amended Complaint [DE-33]. In the memorandum in support of the motion [DE-34], Assistant United States Attorney Sharon Wilson stated she was appearing on behalf of the United States and entering a limited appearance on behalf of all the individual Defendants for purposes of that motion. In addition to explaining why the United States believed Plaintiff's Amended Complaint should be dismissed for violation of Rule 8(a), Ms. Wilson also stated her views on what she perceived to be various deficiencies with Plaintiff's case, but did not file a motion to dismiss on any of those bases. In his Response [DE-35], Plaintiff opposed the United States' motion, but also stated that he was voluntarily withdrawing claims against certain defendants. The United States promptly filed a Reply [DE-36], which, *inter alia*, asked the court to enter an order confirming Plaintiff's voluntarily dismissal of certain defendants and claims.

In an order filed on June 17, 2013, the court allowed the United States' motion [DE-33] in part. Specifically, the court observed that Plaintiff's prolific use of acronyms made his Amended Complaint a "veritable alphabet soup" that had rendered the pleading "indecipherable. June 17, 2013, Order [DE-37] p. 8. The court observed, however, that it was "mindful that outright dismissals of *pro se* complaints is not favored where the defects in the complaint may be curable through amendment," and accordingly, the court directed Plaintiff to file a second amended complaint, with all words written in plain English, within 21 days. The court also stated:

> Given that Plaintiff has the opportunity to file an amended pleading setting forth the exact claims he alleges, the court declines to make any ruling on which claims and defendants remain in this action after Plaintiff's statement that he 'withdraws' certain party defendants.' **Plaintiff is instead instructed to ensure that the amended complaint he files reflects the claims he currently is pursuing in this action**.

6

June 17, 2012, Order [DE-27] pp. 8-9. The court also noted that it was not making any rulings as to

the many observations made by Ms. Wilson, given that no motion was filed with regard to the

perceived deficiencies.

Two days later, Assistant United States Attorney Joshua B. Royster filed a Notice of

Substitution of Counsel for Defendants [DE-38]. Plaintiff thereafter filed his Second Amended

Complaint [DE-39], entitled:

Plaintiff's Second Amended Complaint for Declaratory, Injunctive, and Damage
Relief under the Provisions of the United States (U.S.) Supreme Court's (SCOUS)
Feres Doctrine Rule of Law-Incident to U.S. Military Service Holding and Its No-
Fault-Non-Adversarial Second Rationale Mandate (Feres Doctrine Mandate)
&

Federal Question Challenges to Prevent the Executive Branch and Its Department of
Justice (DOJ) From Covering-Up Crimes Committed by the Department of Veterans
Affairs (DVA) Against U.S. Veterans and Families in Direct Violations of the Feres
Doctrine Exemption to the First and Fifth Amendments to the U.S. Constitution (U.S.
Const.) and the Federal Tort Claims Act (FTCA) and for Other Public Trust Related
Purposes as Compiled Over the Past 20 ½ the Veteran Has Been Denied Equal
Justice Under the Laws of the DVA; As With Millions of Other U.S. Veterans
Similarly Situated Under the Obama-DVA

He now names as Defendants:

13.     Defendant United States of America (USA), and its subordinate agency,
agents, officials of the DVA-Washington D.C., and the DVA-North Carolina (NC)
led and administered by Barack H. Obama, II, current President of the United States
and his Secretary of DVA Eric Shineski.

14.     Defendant VA Medical Center Fayetteville, NC Director Elizabeth Goolsby,
officially and in her individual capacity.

15.     Defendant Sharon F. Troyon, DVA-Outpatient Clinic, Wilmington, NC,
officially and in her individual capacity.

16.     Defendant Charles E. Best, Jr., DVA-Outpatient Clinic, Wilmington, NC,
officially and in his individual capacity.

17.     Defendant Warren v. Hsu, MD., DVA-Outpatient Clinic, Wilmington, NC,
officially and in his individual capacity.

18. Defendant Bharatkumar Thakkar, MD., VA Medical Center Fayetteville, NC.

19.     Defendant K. Pfanzelter, Manager, VA Benefits Administration (VBA)

7

Regional Office (RO) Winston-Salem, NC.

20. Defendant Sharon C. Wilson, Assistant U.S. Attorney for the Southern District of North Carolina.

Second Amend. Compl. [DE-39]. He asserts seven causes of action,[1] and asks for 28-enumerated requests for relief.

Thereafter, the United States filed a "Certification of Scope of Employment and Substitution" [DE-40], pursuant to the Westfall Act, 28 U.S.C. § 2679(d). Therein, R. A. Renfer, J.R.,Chief of the Civil Division, United States Attorney's Office, Eastern District of North Carolina, certifies that "the individual defendants Sharon F. Troyon, Charles E. Best, Warren V. Hsu, M.D., and Baratkumar Thakka, M.D. were acting within the scope of their employment as employees of the VA at the time of the incidents alleged in the Complaint." *Id.* p. 1. Mr. Renfer also certifies that "Assistant United States Attorney Sharon Wilson was acting within the scope of her employment as an employee of the United States Department of Justice at the time of the events alleged in the Second Amended Complaint." *Id.* p. 2. The Certification also states:

This certification also is notice that this suit is deemed an action against the United States under the provisions of the Federal Tort Claims Act and the United States shall be substituted as the party defendant in lieu of the above defendants, making the United States of America the only defendant as to Plaintiff's tort claims.

*Id.* p. 2.

The United States also filed a Motion to Dismiss, wherein it argued that Plaintiff's tort claims against the United States must be dismissed pursuant to Rule 12(b)(1) for lack of subject matter

---

[1] The causes of action are denominated as follows:

(1) The *Feres* Doctrine Mandate Federal Question; (2) Defendant Department of Justice (DOJ) Defamaning (sic) the Veteran's Character & Lack of Candor Toward the Tribunal; (3) Judicial Declaration that Plaintiff Suffer no Pre-Military Medical Condition; (4) Equitable Tolling; (5) The Troyon-Incident and Medical Malpractice, Neglect, Abandonment & DVA High Official Unlawful Reprisal, and (6) North Carolina State Law Medical Malpractice & Intentional Infliction of Emotional Distress.

8

jurisdiction. The United States specifically noted, however, that Plaintiff states in his Second Amended Complaint that he also is suing the individual defendants in their individual capacities pursuant to *Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388 (1971). The United States asserts that Plaintiff has not served any of the individual defendants, and also notes that the court has not conducted a frivolity review of the Second Amended Complaint. The Government states that the motion to dismiss is not intended in any way to be a response on behalf of the individual defendants. *See* Mem. in Supp. of Mot. to Dismiss [DE-42] p. 1 n.1.

Plaintiff filed a brief in opposition [DE-44] to the United States' Motion to Dismiss wherein he, *inter alia*, challenges the United States' "Westfall Certification," asserts that this court must certify to the appropriate attorney general, pursuant to 28 U.S.C. § 2403, that "a statute has been questioned," and requests that the court appoint him counsel.

Shortly thereafter, Plaintiff filed a Motion for Temporary Restraining Order [DE-47], wherein he asserted that on September 4, 2013, he was approached by a Special Agent with the Department of Veterans Affairs, who allegedly informed Plaintiff that he "committed fraud by filing for 'Improved Pension' in 2005 and that an 'indictment' was coming [Plaintiff's] way because [he] play[s] baseball once or twice a week." Mot. for TRO [DE-47] p. 2. Plaintiff asked the court to "issue a restraining order preventing Defendant Obama and his DOJ and DVA from bringing a malicious prosecution against me while this case is pending before the Court." *Id.* p. 6. The court denied Plaintiff's Motion in an order filed on September 17, 2013 [DE-48], explaining that the court was without authority to award the relief requested by Plaintiff.

Plaintiff then filed a "Motion for Rule 15 of the Court to Modify the Second Amended Complaint to Re-Enjoin Defendant Department of Veterans' Affairs Inspector General (DVA-IG)

9

to Incorporate an Additional Claim for First Amendment Retaliation Arising from the September 4, 2013, DVA-IG Agent Kirby Serious Act of Intimidation, Harassment, and Threat of Malicious Prosecution Further Giving Rise to Additional Deasy-Post Traumatic Stress Disorder (PTSD) & Truman-Intentional Infliction of Emotional Distress Claims" [DE-49]. Plaintiff did not submit a proposed amended pleading with his motion. Plaintiff later filed, on January 15, 2014, a "Notice of Additional Newly Discovered Evidence of First Amendment Reprisal in Further Support of ll Case of First Impression-Federal Question Challenges and Requests for Damage Relief under the Feres Doctrine-Rule of Law-Second-Rationale Philosophy & Request for Expedited Cushman-Due Process Hearing" [DE-55]. It appears from the motion that Plaintiff has received notice that the VA may terminate his improved pension financial benefits, and he believes this is further support for a First Amendment reprisal claim. He also requests a "***Cushman-Due Process Hearing***."[2] [DE-55] p. 1.

## II. CERTIFICATION AND SUBSTITUTION

When a plaintiff asserts claims against federal employees, the Westfall Act empowers the Attorney General of the United States to certify that a defendant employee was acting within the scope of his or her employment at the time of the incident giving raise to the claim, and the district court shall deem the action as one against the United States, rather than the individual federal employee. 28 U.S.C. § 2679(d)(1); *see also Guiterrez de Martinez v. Lamagno,* 515 U.S. 417, 419-20 (1995). The United States Attorneys are authorized to issue these certifications on behalf of the Attorney General. *Guiterrez de Martinez v. Drug Enforcement Admin.,* 111 F.3d 1148, 1152 (4th Cir.1997). Upon certification by the Attorney General or a United States Attorney, the United States

___

[2] Plaintiff is presumably referring to *Cushman v. Shineski*, 576 F.3d 1290 (Fed. Cir. 2009).

is substituted as the party defendant and the individual employees are dismissed from the action. 28 U.S.C. § 2679(d)(1); *Lamagno,* 515 U.S. at 420, 115 S.Ct. at 2229. Once the United States is substituted as the proper party, the relevant claims are then governed by the Federal Torts Claims Act. *See* 28 U.S.C. § 2679(b)(1); *Lamagno,* 515 U.S. at 420.

Unless challenged by a plaintiff, the Government's certification is conclusive evidence that the employee was acting within the scope of his or her employment at the time of the alleged wrongful acts or incidents. *Guiterrez de Martinez*, 111 F.3d at 1153. When a plaintiff challenges the certification, the certification constitutes prima facie evidence, and the burden shifts "to the plaintiff to prove, by a preponderance of the evidence, that the defendant federal employee was acting outside the scope of his employment." *Id.* To satisfy this burden, a plaintiff must come forward with either "specific evidence or the forecast of specific evidence that contradicts the Attorney General's certification decision . . . ." *Guiterrez de Martinez,* 111 F.3d at 1155. Mere conclusory allegations and speculation will not satisfy a plaintiff's burden. *Guiterrez de Martinez,* 111 F.3d at 1155.

Where a plaintiff comes forward with sufficient evidence to satisfy his or her burden of proof, the burden shifts back to the Government, and the United States may come forward with evidence supporting its certification. *Guiterrez de Martinez,* 111 F.3d at 1155. Thereafter,

> the district court may allow (in its discretion) limited discovery or conduct an evidentiary hearing, but should not do so if the certification, the pleadings, the affidavits, and any supporting documentary evidence do not reveal an issue of material fact. It is for the district court to assess the sufficiency of the evidence as produced by the plaintiffs. Only if the district court concludes that there is a genuine issue of material fact as to the scope-of-employment issue should the federal employee be burdened with discovery and an evidentiary hearing.

*Id.* This is because "immunity under the Westfall Act, like other forms of absolute and qualified immunity, 'is an *immunity from suit* rather than a mere defense to liability.'" *Id.* at 1154 (emphasis

11

in original) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). State law governs the inquiry of whether an individual is acting within the scope of their employment. *See Jamison v. Wiley*, 14 F.3d 222, 237 (4th Cir. 1994) ("Whether an employee's action falls within the scope of his employment under the Westfall Act is to be determined according to the rules of respondeat superior of the state in which the wrongful conduct occurred.").

Here, as discussed, the Government has submitted the certification that Sharon F. Troyon, Charles E. Best, Warren V. Hsu, M.D., Baratkumar Thakka, M.D., and Sharon Wilson[3] were all acting within the scope of their employment at the time of the incidents alleged in the Complaint. The issue, therefore, is whether Plaintiff has satisfied his burden of coming forward with evidence, or a forecast of specific evidence, that any of these defendants were not act within the scope of their employment at the time of the incidents giving rise to his tort claims. The court finds that he has not.

Plaintiff asserts that these Defendants "have engaged in criminal falsification of official documents or conspiracy to obstruct justice . . . that is far outside the scope of public employment." Pl.'s Opp. to Mot. to Dismiss [DE-44] p. 25. Other than his generalized assertions, however, the only specifics mentioned by Plaintiff are Sharon Wilson's alleged false statements in previous filings in this court, which he contends he has set forth in the second cause of action in the Second Amended Complaint. *See id.* Consequently, because Plaintiff has not come forward with evidence, or a specific forecast of evidence, that contradicts the certification as to defendants Sharon F. Troyon, Charles E. Best, Warren V. Hsu, M.D., and Baratkumar Thakka, M.D., the United States' substitution as to those defendants in Plaintiff's tort claims is proper.

---

[3] The Government did not submit a certification as to Elizabeth Goolsby or K. Pfanzelter, both who appear to be named as individual defendants. *See* Second Amended Compl. [DE-39] p. 26.

12

With regard to Sharon Wilson, even if the court could find that Plaintiff has made a "specific forecast of evidence" that Wilson made false statements in previous filings, Plaintiff still has not met his burden in showing that Wilson was not acting within the scope of her employment when she made the statements. Under North Carolina law, "[t]o be within the scope of employment, an employee, at the time of the incident, must be acting in furtherance of the principal's business and for the purposes of accomplishing the duties of his employment." *Troxler v. Charter Mandala Ctr.*, 89 N.C. App. 268, 271, 365 S.E.2d 665, 668 (1988). Although North Carolina courts have rarely found intentional torts to be within the scope of employment, "rarely does not mean never." *White v. Cons. Planning, Inc.*, 166 N.C. App. 283, 296, 603 S.E.2d 147, 157 (2004). "The scope of employment inquiry has been phrased as whether the employee was 'about his master's business or whether he stepped aside from his employment to commit a wrong prompted by a spirit of vindictiveness or to gratify his personal animosity or to carry out an independent purpose of his own,'" or alternatively, whether an employee "'departed, however briefly, from his duties in order to accomplish a purpose of his own, which purpose was not incidental to the work he was employed to do.'" *Whedbee v. United States*, 352 F. Supp. 2d 618, 625 (M.D.N.C. 2005) (quoting *Medlin v. Bass*, 327 N.C. 587, 593, 340 S.E.2d 116, 121-22 (1986) and *Wegner v. Delly-Land Delicatessan*, 270 N.C. 62, 66, 153 S.E.2d 804, 808 (1967)). The allegedly false statements made by Wilson are all found within the United States' Response in Opposition to Plaintiff's Motion for Preliminary Injunction [DE-27]. The court cannot discern, and the Plaintiff offers no explanation, how the statements–if they are in fact false–constitute a departure from Wilson's duties to accomplish a purpose of her own, "which purpose was not incidental to the work [she] was employed to do." *Wegner*, 270 N.C. at 66, 153 S.E.3d at 808. Indeed, if all of Plaintiff's assertions are to be believed,

13

Wilson was acting in accordance with what he believes to be the Department of Justice's aims. *See* Second Amend. Compl. [DE-39] ¶ 33, p. 43 ("In the wake of the DOJ-Wilson falsifications the Veteran truly believes that the Obama-DOJ has engaged in psychological operations against him with the intent to see him loose [sic] control . . . ."). Consequently, the court finds that Wilson was acting within the scope of her employment when she made the allegedly false statements in the brief filed with this court.

Accordingly, the court finds that the United States is properly substituted as the defendant with regard to Plaintiff's tort claims against Sharon F. Troyon, Charles E. Best, Warren V. Hsu, M.D., Baratkumar Thakka, M.D. , and Sharon Wilson, and that these claims are governed by the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671 et seq.[4]

## III. MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

The court now turns to the United States' assertion that Plaintiff's tort claims must be dismissed for lack of subject matter jurisdiction.

### A. Standard of Review

The existence of subject matter jurisdiction is a threshold issue which must be addressed before the court can reach the merits of the case. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 95-102 (1998); *accord Jones v. Am. Postal Workers Union*, 192 F.3d 417, 422 (4th Cir. 1999). It is a fundamental rule that a court has "jurisdiction to determine [its] jurisdiction." *Greenwich Fin. Servs. Distressed Mortg. Fund 3 LLC v. Countrywide Fin. Corp.*, 603 F.3d 23, 27 (2d Cir. 2010). Subject matter jurisdiction is both a constitutional and statutory requirement which

---

[4] Accordingly, Plaintiff's claims for defamation, intentional infliction of emotional distress, medical malpractice, neglect, abandonment, negligent infliction of emotional distress asserted against those defendants are now deemed to be against the United States.

14

restricts federal judicial power to a limited set of cases and controversies. Thus, "no action of the parties can confer subject-matter jurisdiction upon a federal court." *Ins. Corp. of Ir. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982). A defendant may challenge subject matter jurisdiction pursuant to Rule 12(b)(1) facially or factually. *See Wollman v. Geren*, 603 F. Supp. 2d 879, 882 (E.D. Va. 2009). If the government presents a facial challenge by arguing the complaint fails to allege facts upon which subject matter jurisdiction can be based, all facts alleged in the complaint are presumed true. *See Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). Alternatively, if the government presents a factual challenge by arguing that jurisdictional facts alleged in the complaint are untrue, the court may consider extrinsic information beyond the complaint to determine whether subject matter jurisdiction exists. *See Kerns v. United States*, 585 F.3d 187, 192-93 (4th Cir. 2009). In both situations, the burden rests with the party seeking federal jurisdiction to prove that federal jurisdiction is proper. *See Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991). Indeed, because the tort claims are governed by the FTCA, it is Plaintiff's burden "to prove an unequivocal waiver of sovereign immunity and the existence of subject matter jurisdiction." *LeRose v. United States*, 285 F. App'x 93, 96 (4th Cir. 2008).

When a defendant challenges subject matter jurisdiction, "the district court is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Id.* (citations omitted). A district court should grant a Rule 12(b)(1) motion to dismiss "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Richmond*, 945 F.2d at 768 (citation omitted); *see Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999).

15

## B. Analysis

It is well established that the United States, as sovereign, is immune from suit unless it consents to be sued. *Gould v. United States Dep't of Health and Human Servs.*, 905 F.2d 738, 741 (4th Cir. 1990). "[T]he terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *United States v. Sherwood*, 312 U.S. 584, 586 (1941). "Sovereign immunity is jurisdictional in nature." *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994). Accordingly, when sovereign immunity prevents a plaintiff from recovering, a court lacks subject matter jurisdiction to hear the plaintiff's claims. *Id.*

The FTCA acts a limited waiver of sovereign immunity, but it "permits suit only on terms and conditions strictly proscribed by Congress." *Gould*, 905 F.2d at 741. One of those conditions is the exhaustion of administrative remedies. The FTCA specifically provides:

> An action shall not be instituted upon a claim against the United States for money damages for injury or loss . . . caused by negligent or wrongful act or omission of any employee of the Government while acting within the scope of his or her office or employment, unless the claimant shall have first presented the claim to the appropriate federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail. The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant at any time thereafter, be deemed a final denial of the claim for purposes of this section.

28 U.S.C. § 2675(a). The administrative claim must be presented to the appropriate federal agency within two years of the incident giving rise to the claim, and any subsequent court action must be commenced within six months after the date the agency mails the notice of final denial. *See* 28 U.S.C. § 2401(b). "[T]he requirement of filing an administrative claim is jurisdictional and may not be waived." *Henderson v. United States*, 785 F.2d 121, 123 (4th Cir. 1986).

In this case, the record shows that Plaintiff filed this action asserting claims under the FTCA

16

on March 27, 2012, and later submitted an administrative claim on May 17, 2012. *See* Administrative Claim [DE-42-1]. Thus, he did not exhaust his administrative remedy prior to initiating this action. Plaintiff nevertheless argues that the filing of the First Amended Complaint after he was issued the VA's notice of final decision satisfies the FTCA's exhaustion requirements. The court does not agree. The majority of courts to have addressed the issue have concluded that "as a general rule, a premature 'complaint cannot be cured through amendment, but instead, plaintiff must file a new suit." *Duplan v. Harper*, 188 F.3d 1195, 1199 (10th Cir. 1999) (quoting *Sparrow v. USPS*, 825 F. Supp. 252, 254-55 (E.D. Cal. 1993)); *see also Hoffenberg v. Provost*, 154 F. App'x 307, 311 (3d Cir. 2005) (determining that "the date of the amended complaint cannot serve as the date the federal suit was 'instituted'" under the FTCA); *Toomey v. United States*, Civil Action No. 5:10-CV-260, 2012 WL 876801, at \*3 (E.D. Ky. March 14, 2012); *Boege v. Gallagher*, No. CIV. 10-00565, 2011 WL 2746324, at \*1 (D. Haw. July 11, 2011) ("Insofar as the exhaustion of administrative remedies under the FTCA is a jurisdictional requirement, a plaintiff cannot cure the premature filing of an FTCA complaint simply by filing an amended complaint); *Edwards v. District of Columbia*, 616 F. Supp. 2d 112, 117 (D.D.C. 2009) (concluding that district court "lack[ed] subject matter jurisdiction over Plaintiff's FTCA claims, which were filed before the exhaustion requirement under section 2675(a) was satisfied, and this jurisdictional defect cannot be cured by the filing of an amended complaint"). This is because "[a]llowing claimants generally to bring suit under the FTCA before exhausting their administrative remedies and to cure the jurisdictional defect by filing an amended complaint would render the exhaustion requirement meaningless and impose an unnecessary burden on the judicial system." *Duplan*, 188 F.3d at 1199. This court agrees with the reasoning of these courts, and concludes that Plaintiff's filing of the First Amended Complaint does

17

not satisfy the FTCA's exhaustion requirement.[5]

Because Plaintiff failed to exhaust his administrative remedies prior to the institution of this action, his tort claims under the FTCA against the United States are DISMISSED for lack of subject matter jurisdiction.

## IV. REMAINING CLAIMS AND MOTIONS

The Government's Motion to Dismiss does not address any other claims purportedly asserted by Plaintiff, but suggests that the court conduct a frivolity review of the Second Amended Complaint. The court declines to undertake another frivolity review at this juncture. The court nevertheless observes that upon review of the Second Amended Complaint, it appears that Plaintiff is attempting to assert the following additional claims, or requests for relief:

(1)     Plaintiff seeks a "judicial determination" stating either (1) that the doctrine announced in *Feres v. United States*, 340 U.S. 135 (1950)[6] is unconstitutional or (2) that it constitutes a mandate to the VA. If the latter, Plaintiff seeks a determination that the VA has violated this mandate with regard to his various claims for benefits. *See* Second Amended Compl. [DE-39] p. 31.

(2)     He also seeks a "judicial declaration" that he suffered no pre-existing medical condition prior to joining the United States Navy on July 12, 1982, and that "[t]herefore, each and every of

---

[5]     The court notes that Plaintiff asserts that this court "approved" the First Amended Complaint. It did not. Plaintiff moved to amend his complaint; in the order allowing that motion, the court observed that Plaintiff still had the right to amend his pleading once as a matter of course pursuant to Federal Rule 15(a)(1). In other words, Plaintiff needed no leave from the court, at that juncture, to file an amended complaint. Moreover, the court did not review any proposed amended complaint. *See Toomey*, 2012 WL 876801, at *4 (rejecting the plaintiff's arguments that the court's allowing of the plaintiff's unopposed motion to amend the complaint constituted the institution of a new action for the purposes of the FTCA because the court "at no time stated, implied, or was even asked to decide, that the Amended Complaint should be treated as the institution of a new suit under the FTCA").

[6]     In *Feres*, the Supreme Court barred tort claims under the FTCA against the United States brought by service members for injuries that "arise out of or are in the course of activity incident to service." 340 U.S. at 146. One of the rationales given by the Supreme Court for its decision was the fact that service members already receive veterans' benefits, and Congress could not have intended them to receive a double recovery for their injuries. *Id.* at 144-45.

18

the [Plaintiff's] presently cited or disputed mental and physical claims in his VA-record should be declared '*incident to military service'* or '*service-connected*." *Id.* pp. 33-34.

(3) Plaintiff also requests that the court recognize the "*Feres Doctrine Mandate*" and find that the VA "has violated the Plaintiff's constitutional property rights to a 100% service-connected rating in lieu of the wrongly and willfully manipulated 60% rating for improved pension purposes." *Id.* p. 38.

(4) He alleges that the VA's "obstruction of justice and undue wanton delays in timely processing and fairly adjudicating [his] claims" has violated his constitutional property rights. *Id.* p. 29.

(5) Plaintiff also seeks, *inter alia*, an award regarding his claims dating back to January 14, 1994. *Id.* p. 41.

(6) Plaintiff sues Defendant Troyon in her "individual capacity for misconduct and causing [him] to suffer PTSD and irretrievable damage to his constitutional and property interests." *Id.* p. 44 n.44.

(7) Plaintiff alleges Defendant Goolsby "willingly engaged in negligent supervision, failure to intervene and prevent aggravation of Plaintiff's VA created acquired pyschological disorders and associated VA-1151/FTCA claims in this litigation" *Id.* p. 46.

(8) He appears to assert a claim against all individual "DVA defendants" under *Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), for violating his Fifth Amendment rights. *Id.* p. 56.

(9) He appears to challenge the constitutionality of 38 U.S.C. § 511.

Some of these claims appear to be asserted against the United States, at least in some form.

Although the court declines to conduct a frivolity review of all Plaintiff's remaining claims, the court is still cognizant of its duty satisfy itself that it has jurisdiction. *See Brickwood Contractors, Inc. v. Datanet Eng'g, Inc.*, 369 F.3d 385, 390 (4th Cir. 2004). After undertaking this duty, the court concludes that it is without jurisdiction to hear many of Plaintiff's remaining claims because they are grounded in the theory that the United States, through the Department of Veterans Affairs and various officials employed at DVA, has denied him benefits to which he is entitled.

19

"In cases involving benefits owed to veterans, Congress has created a scheme conferring exclusive jurisdiction over claims affecting veterans' benefits to some courts, while denying all other federal courts any jurisdiction over such claims." *Veterans for Common Sense v. Shineski*, 678 F.3d 1013, 1020 (9th Cir. 2012). Specifically, the Veterans' Judicial Review Act of 1988, Pub.L. No. 1000-687, div. A. 102 Stat. 4105 (1988) ("VJRA") "established a multi-tiered framework for the adjudication of claims regarding veteran benefits." *Beamon v. Brown*, 125 F.3d 965, 967 (6th Cir. 1997). As the court for the Northern District of West Virginia explained:

> The VJRA does provide a limited waiver of sovereign immunity for lawsuits seeking review of VA benefit decisions. Subject to certain stated limitations, however, the VJRA vests exclusive jurisdiction in the [Court of Appeals for Veterans Claims ("CAVC")] to review such decisions. *See* 38 U.S.C. 7252. Pursuant to [38 U.S.C. §] 511(a), the Secretary of Veterans Affairs is responsible for deciding *all* questions of law concerning the provision of benefits to veterans, their dependents, or their survivors. An appeal from the Secretary's decision lies with the Board of Veterans' Appeals ("BVA"). 38 U.S.C. § 7104(a); 38 C.FR. Section 20.10(a). The BVA decision may be appealed by the claimant to the CAVC, pursuant to 38 U.S.C. section 7252(a), and then under certain circumstances, to the United States for the Federal Circuit, pursuant to 38 U.S.C. sections 7252(c), 7292.

*Corson v. Secretary of Veterans Affairs*, Civil Action No. 1:09CV49, 2010 WL 532382, at *8 (N.D.W.Va. Feb. 8, 2010). "The decisions of the Federal Circuit are final and only 'subject to review by the Supreme Court upon certiorari.'" *Veterans for Common Sense*, 678 F.3d at 1022.

Under this statutory scheme, most courts have concluded that the VJRA "precludes jurisdiction over a claim if it requires the district court to review 'VA decisions that related to benefits decisions,' *Beamon,* 125 F.3d at 971, including 'any decision made by the Secretary in the course of making benefits determinations,'*Broudy [v. Mather],* 460 F.3d [106,] 115 [(D.C. Cir. 2006)]." *Veterans for Common Sense*, 678 F.3d at 1025. Accordingly, "[n]umerous courts have recognized that § 511 broadly divests courts of jurisdiction over constitutional claims related to

20

benefits even where those claims concern agency procedures and do not challenge specific VA benefit determinations." *Id.* at 1031 (collecting cases). Some courts have determined, however, that the VJRA does not divest district courts of jurisdiction to hear facial constitutional challenges to acts of Congress. *See, e.g., Larrabee by Jones v. Derwinski*, 968 F.2d 1497, 1501 (2d Cir. 1992) ("Although district courts continue to have 'jurisdiction to hear facial challenges of legislation affecting veterans' benefits,' other constitutional and statutory claims must be pursued within the appellate mill Congress established in the VJRA."). *But see Veterans for Common Sense*, 678 F.3d at 1033 (questioning whether the courts which have concluded that facial challenges survive "have thoroughly analyzed the efforts Congress undertook to broaden § 511 and the concurrent effort it took to establish an exclusive review scheme for claims related to veterans' benefits). In those jurisdictions, a plaintiff cannot evade § 511(a) by cloaking a claim in constitutional terms; rather, the courts must "examine the substance of the allegations, rather than the plaintiff's labels, to determine their true nature." *Weaver v. United States*, 98 F.3d 518, 520 (10th Cir. 1996). Where the claims "are, in substance, nothing more than a challenge to the underlying benefits decision," the district court lacks jurisdiction to hear them. *Id.*

As the court previously indicated, it has examined the Second Amended Complaint, which consists of 72 pages, including many paragraphs therein that span multiple pages. The court finds that it lacks jurisdiction to consider the following claims because they are, at bottom, challenging the underlying benefits decisions made by the DVA:

(1)     Plaintiff's request for a "judicial determination" stating either (1) that the doctrine announced in *Feres v. United States*, 340 U.S. 135 (1950)[7] is unconstitutional or (2) that it constitutes

---

[7] Even if the court did have jurisdiction over this claim, it could not declare a binding decision of the Supreme Court to be unconstitutional.

a mandate to the DVA. If the latter, Plaintiff seeks a determination that the DVA has violated this mandate with regard to his various claims for benefits. *See* Second Amended Compl. [DE-39] p. 31.

(2) His request for a "judicial declaration" that he suffered no pre-existing medical condition prior to joining the United States Navy on July 12, 1982, and that "[t]herefore, each and every of the [Plaintiff's] presently cited or disputed mental and physical claims in his DVA-record should be declared '*incident to military service*' or '*service-connected.*" *Id.* pp. 33-34.

(3) His requests that the court recognize the "*Feres Doctrine Mandate*" and find that the DVA "has violated the Plaintiff's constitutional property rights to a 100% service-connected rating in lieu of the wrongly and willfully manipulated 60% rating for improved pension purposes." *Id.* p. 38.

(4) His claim that the DVA's "obstruction of justice and undue wanton delays in timely processing and fairly adjudicating [his] claims" has violated his constitutional property rights. *Id.* p. 29.

(5) His request for an award regarding his claims dating back to January 14, 1994. *Id.* p. 41.

*See Karmatzis v. Hamilton,* ___ F. App'x ___, 2014 WL 278488, at \*2 (7th Cir. Jan. 27, 2014) (affirming district court's dismissal of action where the district judge properly concluded that plaintiff's due process arguments did not constitute a facial attack, but instead were challenging the VA's conduct in his particular case); *Bradley v. United States Veterans Admin.,* 106 F.3d 383 (1st Cir. 1997) (per curiam) (affirming district court's dismissal of action challenging the DVA's decision to reduce plaintiff's disability benefits and noting that a plaintiff cannot "circumvent [§ 511] by asserting constitutional claims); *Zuspann v. Brown,* 60 F.3d 1156, 1159-60 (5th Cir. 1995) (explaining that the pertinent issue is "whether the plaintiff is alleging a facial attack on the constitutionality of an act of Congress or whether the plaintiff is challenging the VA's decision to deny him benefits" and holding that the district court had no jurisdiction over veteran's action against defendants in their official capacities for alleged violations of the Fifth Amendment); *Larrabee,* 968 F.2d at 1501 (determining that the district court lacked jurisdiction to hear plaintiff's

22

claims that defendants violated veteran's due process rights in dispute over medical treatment).

Trueman also challenges the constitutionality of 38 U.S.C. § 511. To the extent that Trueman is making a facial challenge to this statute, his claim survives at this juncture.

Plaintiff also seeks to amend his complaint again to assert a claim alleging that his First Amendment rights were violated by an interaction with an Agent Kirby with Department of Veterans Affairs who allegedly informed Plaintiff that an indictment was "coming [his] way." He also contends that this interaction constitutes intentional infliction of emotional distress. In his latest filing, Plaintiff indicates that he has received notice that the VA may terminate his improved pension financial benefits, which he believes is further support of his First Amendment reprisal claim.

Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend a pleading "shall be freely given when justice so requires." FED. R. CIV. P. 15(a). The Supreme Court, in *Foman v. Davis*, 371 U.S. 178 (1962), set forth the general standard for district courts to consider when making Rule 15(a) determinations:

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claims on the merits. In the absence of any apparent or declared reason such as undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party for virtue of the allowance of the amendment, futility of the amendment, etc., the leave should, as the rules require, be "freely given."

*Id.* at 182 (quoting FED. R. CIV. P. 15(a)). Thus, in the Fourth Circuit, the law is well settled "that leave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." *Edwards v. City of Goldsboro*, 178 F.3d 231, 242 (4th Cir. 1999). The decision to deny or grant leave to amend a pleading is within a district court's discretion; however a court may not

23

exercise its discretion in a way that undermines Rule 15. *See Pittston Co. v. United States*, 199 F.3d 694, 705 (4th Cir. 1999).

For the reasons already discussed, this court does not have jurisdiction over claims challenging veterans benefits determinations, even if Plaintiff alleges that a constitutional right was violated in the course of making the determination. *See, e.g., Hicks v. Veterans Admin.*, 961 F.2d 1367, 1370 (8th Cir. 1992) (dismissing action where plaintiff's claim that retaliation in violation of his First Amendment rights "was the cause of the reduction of his disability rating and benefits is essentially a challenge to the reduction of benefits on a constitutional basis"). With regard to his allegations about the potential criminal indictment, the court does not agree with the Government's limited objection that "Plaintiff's 'naked assertions' of injury are devoid of 'further factual enhancement.'" [DE-52] p. 4. That is not to say that Plaintiff's purported claims are not subject to attack on some basis; they very well may be. But the court cannot say, at this juncture, that Plaintiff has not provided sufficient factual detail.

Accordingly, Plaintiff's motion to amend [DE-49] is ALLOWED in part. Plaintiff is DIRECTED to file his amended complaint on or before April 4, 2014. **Plaintiff is reminded that this court has already ruled that the United States has been substituted as defendant with regard to Plaintiff's tort claims against Sharon F. Troyon, Charles E. Best, Warren V. Hsu, M.D., Baratkumar Thakka, M.D., and Sharon Wilson, and those claims have been dismissed. Plaintiff also is reminded that this court lacks jurisdiction to hear any challenge to the determination of his veterans benefits. Plaintiff also is DIRECTED ensure that his amended**

**pleading complies with Rule 8(a) of the Federal Rules of Civil Procedure**.[8] The Government has thirty (30) days from Plaintiff's service of the Amended Complaint to file an Answer or an appropriate motion. Any motion must thoroughly address the relief the Government seeks as it applies to Plaintiff's claims.

Additionally, as the Government has noted, Plaintiff has failed to serve the individual defendants in this action, although he has submitted a "waiver of service" to the United States Attorney. The Government, however, cannot waive service as to the individual defendants for the claims asserted against them in their individual capacity. Accordingly, when Plaintiff files the amended complaint, he also is DIRECTED to submit completed summonses for the individual defendants to the Clerk of Court, who will forward them to the United States Marshal for service.

As to the remaining motions and/or requests for relief, they are denied. First, Plaintiff, in the course of his response to the Government's motion to dismiss, asserts that this court must certify this case to the Attorney General pursuant to 28 U.S.C. § 2403. That statute provides, in pertinent part:

> In any action, suit or proceeding in a court of the United States to which the United States or any agency, officer, or employee thereof is not a party, wherein the constitutionality of any Act of Congress affecting the public interest is drawn in question, the court shall certify such fact to the Attorney General, and shall permit the United States to intervene for presentation of evidence, if evidence is otherwise admissible in the case, and for argument on the question of constitutionality. . . .

§ 2403(a). The United States already is a party to this action, therefore certification under the statute is unnecessary. Plaintiff also, in his latest document filed with the court, requests a hearing. His

---

[8] The Second Amended Complaint spans 72 pages and consists of 56 "paragraphs." Many of the "paragraphs" within the pleading span multiple pages. *See, e.g.,* Second Amended Compl. [DE-39] ¶¶ 32, 33. The pleading begins with an "Introduction" that consists of 24 pages. The document also is peppered with 65 footnotes. The pleading, as a whole, is rambling and repetitive, and contains large sections of discourse that do not appear to be pertinent to Plaintiff's claims for relief.

25

request [DE-55] is DENIED.

Finally, Plaintiff, in his response to the Motion to Dismiss, includes a request for appointment of counsel, presumably pursuant to 28 U.S.C. § 1915(e)(1). Although § 1915(e)(1) authorizes the court to "request an attorney to represent any person unable to afford counsel," there is no constitutional right to counsel in civil cases, and a court should exercise its discretion to "request" counsel for pro se civil litigants "only in exceptional" circumstances. *Cook v. Bounds*, 518 F.2d 779, 780 (4th Cir. 1975); *see Whisenant v. Yuam*, 739 F.2d 160, 163 (4th Cir. 1984), *abrogated on other grounds by Mallard v. U.S. Dist. Court for the S. Dist. of Iowa*, 490 U.S. 296 (1989). The existence of exceptional circumstances depends upon "the type and complexity of the case, and the abilities of the individuals bringing it." *Whisenant*. 739 F.2d at 163 (quotation omitted). The court finds that, considering the nature of the claims presented and plaintiff's demonstrated ability to articulate his claims, the facts of this case do not present exceptional circumstances warranting the appointment of counsel at this time. Accordingly, Plaintiff's request for counsel is DENIED.

## V. CONCLUSION

For the foregoing reasons, the United States' Motion to Dismiss [DE-41] the tort claims asserted against it is ALLOWED. Plaintiff's Motion to Amend [DE-49] is ALLOWED in part, and Plaintiff is DIRECTED to file his amended complaint on or before April 4, 2014. The United States has thirty (30) days from Plaintiff's service of the Amended Complaint to file an Answer or an appropriate motion. Plaintiff also is DIRECTED to submit completed summonses for the individual defendants by April 4, 2014. Plaintiff's Request for Hearing [DE-55] is denied, as his request for appointment of counsel and request that the court certify the case to the Attorney General. The Clerk of Court is DIRECTED to continue the management of this case.

26

SO ORDERED. This <u>17</u> day of March, 2014.

_James C. Fox_

JAMES C. FOX
Senior United States District Judge

27