## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## SOUTHERN DIVISION
## No. 7:12-CV-73-F

| | |
|---|---|
| JEFFERY A. TRUEMAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) **ORDER** |
| | ) |
| UNITED STATES OF AMERICA, et al. | ) |
| | ) |
| Defendants. | ) |

This matter is before the court on the Motion to Dismiss [DE-70] filed by the United States (also, "the Government") and Plaintiff's "Emergency Motion to Amend the Third Complaint & Change the Status of the Trueman v. Rumsfeld Case to Dismissed Without Prejudice Arising From Newly Discovered Department of Veterans Affairs (DVA) High Official Corruption Exposed by the United States House of Representatives Committee on Veterans Affairs (DVA-Scandal) that Goes to the Heart of Plaintiff's Federal Question Challenges and Case of First Impression Requests For Relief Post-Filing of the Third Amended Complaint & Request for Jury Trial—on the Constitutinoal [sic] Violations of SCOUS-FDM-Entitlements Under the Law of Defendant DVA in Association with All *Bivens*-Claims Arising From Newly Discovered Evidence Associated with the DVA-Scandal and Congressional Hearings and Testimony of Defendant DVA High Officials Relevant to this Case of First Impression" [DE-76] (hereinafter, "Motion to Amend"). Plaintiff's "Notice of Newly Discovered Racketeer Influenced and Corrupt Organization Act (RICO ACT) Developing Class Action Evidence & Request for Cushman-Due Process Hearing to Compel Defendant Department of Veterans Affairs (DVA)—Veterans Benefits Administration (BVA) to Release the Plaintiff's Lawful Backpay Wrongfully Collected as a Bad Debt to Cover Up the Defendant Kiry

[sic] and Defendant McQuade First Amendment Retaliation Incidents Establishing All Requirements Necessary to Incorporate a RICO Act Class Action–Cause of Action Within the Pending Request to Amend the Third Complaint and For Other Public Trust Purposes" [DE-78] (hereinafter "Motion to Compel"). For the reasons stated below, the Motion to Dismiss [DE-70] is ALLOWED, the Motion to Amend [DE-76] is DENIED, the Motion to Compel [DE-78] is DENIED and Plaintiff's claims are DISMISSED.

## I. PROCEDURAL HISTORY

On March 27, 2012, proceeding pro se, Plaintiff Jeffery Trueman ("Trueman" or "Plaintiff") filed an application to proceed *in forma pauperis* [DE-1]. In an order filed on March 29, 2012 [DE-3], United States Magistrate Judge William A. Webb allowed Plaintiff's application and directed the Clerk of Court to file the Complaint [DE-4]. On April 17, 2012, Plaintiff filed a "Notice of Motion of Motion for Expedited Hearing to Restore the Plaintiff's Feres Doctrine Mandated (FDM) Pain Management Program (PMP) and Successful Treatment Plan to its Previous Status Prior to the Involvement of Defendant Physician Assistant Troyon" [DE-9].

In the Original Complaint, Plaintiff alleged he served in the United States Navy from 1982 until his honorable discharge in 1994. Compl. [DE-4] ¶¶ 1, 3. He receives medical care from the Department of Veterans Affairs ("VA"). In 2006, during his treatment by the VA, he received a recommendation for a "Pain Management Program" which included both acupuncture treatment and daily prescribed pain medication. Compl. ¶¶ 3; 21. On February 28, 2012, Plaintiff met with Sharon F. Troyon, his new primary care provider and a physician assistant with the VA. Plaintiff alleges Troyon did not authorize acupuncture treatment, and instructed Plaintiff to wean off his pain medication within a five-day period. Compl. ¶¶ 23-24. He alleged Troyon "has a dislike in prescribing pain medication to Veterans" and that he has since been "abandoned" by the VA.

2

Compl. ¶ 3. He asserted claims under the Federal Tort Claims Act ("FTCA") alleging, *inter alia*, medical malpractice, and named the following as Defendants: "United States of America, Department of Veterans Affairs (VA) Wilmington North Carolina Outpatient Clinic (WVAOPC), and Physician Assistant Sharon F. Tryon and WVAOPC Practice Manager Charles E. Best, Jr." Compl. (Caption).

On April 17, 2012, Plaintiff filed a "Notice of Motion & Motion for Expedited Hearing to Restore the Plaintiff's Feres Doctrine Mandated (FDM) Pain Management Program (PMP) and Successful Treatment Plan to its Previous Status Prior to the Involvement of Defendant Physician Assistant Troyon" [DE-9]. Therein, Plaintiff requested an expedited hearing and sought declaratory and injunctive relief. Specifically, he sought "a declaration that the medically unsound termination of his 'Pain Management Program (PMP)' by Defendant [Troyon] was arbitrary, premature, and medically ill-advised due to the totality of his . . ." health history. Notice [DE-4] at p.2. He asked the court to, *inter alia*, order Defendants to reinstate his previous Pain Management Program, including prescriptions for pain medication. *Id.* He asserted that he would run out of his pain medication, hydrocodone, on or before April 18, or 20, 2012, and that his cessation of taking hydrocodone would "present real danger to his abstinence from alcohol" and would aggravate his various mental and physical health issues. Notice [DE-4] at p. 4.

In an Order filed on April 24, 2012, the court construed the Notice [DE-4] to be both a motion for a temporary restraining order and a motion for preliminary injunction. The court denied Plaintiff's request for a temporary restraining order and/or preliminary injunction, finding that Plaintiff had failed to meet his burden of proof. Specifically, the court noted that it may grant a temporary restraining order or a preliminary injunction only if the moving party demonstrates that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of

3

preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest," *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008), and that Plaintiff had not established these requirements. *See* April 24, 2012 Order [DE-12].

On May 8, 2012, Plaintiff filed a Motion to Amend Original Complaint [DE-16]. Defendant the United States filed a response [DE-17] to the Motion to Amend, wherein the United States took no position on the filing of an Amended Complaint, but objected to Plaintiff's suggestion that the court rule on whether any claims asserted in the unseen Amended Complaint "relate back" to other claims or toll prior claims asserted by Plaintiff under the FTCA. Defendant also filed a Motion for Extension of Time to File Responsive Pleadings [DE-18] seeking sixty days to file a response to the Original Complaint, or if the court allowed Plaintiff to file an Amended Complaint, sixty days to file a responsive pleading to the Amended Complaint.

Around this same time, on May 17, 2012, Plaintiff apparently filed an administrative tort claim under the FTCA, alleging medical malpractice by the VA beginning in February 2012, and claiming that his benefits had been wrongfully denied since 1994. *See* FTCA Claim [DE-42-1]. His claim was denied by a letter from the VA mailed on August 14, 2012. *See* August 14, 2012 Letter [DE-42-2].

Thereafter, on December 14, 2012, Plaintiff filed the Petition for Preliminary Injunction [DE-26], wherein the Plaintiff asked the court to, *inter alia*, compel the Department of Veterans Affairs "to fee base all the [Plaintiff's] medical care for civilian outpatient treatment in the interest of justice." Petition for Preliminary Injunction [DE-26] p. 10. Defendant the United States opposed the motion for a variety of reasons [DE-27].

In an Order filed on January 22, 2013 [DE-29], the undersigned allowed Plaintiff's Motion to Amend the Complaint [DE-16], noting that Plaintiff did not need court approval to file an

4

amended complaint as of right. The court specifically noted, however, that it was not ruling on issues relating to "relation back" or tolling of any claims. The court ordered that Plaintiff was to file his amended complaint on or before February 11, 2013. The court also ordered that the Defendant United States was to file a responsive pleading within sixty (60) days of February 11, 2013, or when Plaintiff filed the Amended Complaint, whichever was earlier.

Plaintiff filed the Amended Complaint on February 8, 2013 [DE-30]. Plaintiff specifically titled the Amended Complaint as follows:

First Amended Complaint (AC) for Declaratory, Injunctive, and Damage Relief under the Feres Doctrine Rule of Law (FD-ROL)–Incident to Military Service (ITMS)–No-Fault/Non-Adversarial (NFNA)–Second Rationale (SR)(FD-ROL-ITMS-NFNA-SR) Holding of the Supreme Court of the United States of America (SCOUS) on December 4, 1950 & the Difiance [sic] of Defendant Department of Veterans Affairs (DVA) to Honor the SCOUS–FD-ROL-NFNA-SR Mandate (FDM)(1950) Giving Rise to the Violations of Plaintiff's Federal Due Process and Property Rights Under the Laws of DVA-Compensation & Pension (C&P) Statutory System and for Other Purposes in the Interest of Substantial Justice Under the FD-ROL Exemption to the United States Constitution (U.S. Const.) (1789), Bill of Rights (BORs)(1791), and Federal Tort Claims Act (FTCA (1946).

Amended Compl. [DE-30]. He named the following as Defendants:

12. Defendant United States of America (USA), and its subordinate agency, agents, officials of the DVA–Washington, D.C., and the DVA-North Carolina led and administered by Barack H. Obama II, current President of the United States and his Secretary of DVA Eric Shineski.

13. Defendant Peebles MD, Baton Rouge VAOPC, Baton Rouge, LA (VAOPC-BRLA).

14. Defendant Psychiatrist Bobby Simpson, VAOPC–BRLA.

15. Defendant Psychiatrist Kay Young, DVA Medical Center, White City, OR.

16. Defendant Meena Gulati MD., DVA Medical Center, Atlanta, GA (VAMC-ALTGA).

17. Defendant Psychiatrist Hsu, VAMC-ALTGA-VAOPC East Point, GA.

18. Defendant Nurse Practitioner Wendy Thornton, DVAOPC Macon, GA.

19. Defendant VA Medical Center Fayetteville, NC (VAMC-FNC) Director Elizabeth Goolsby.

20. Defendant Nurse Practitioner Yee Simmons, VAMC-FNC.

21. Defendant Sharon F. Troyon, physician assistant and employee of Defendant VA-Outpatient Clinic, Wilmington, NC (VAOPC-WNC).

5

22. Defendant Charles E. Best, Jr., DVA provider manager, VAOPC-WNC.

23. Defendant Warren V. Hsu MD., VAOPC-WNC.

24. Unknown Defendant VAMCFNC IRIS Manger [sic], VAMC-FNC.

25. Unknown DVA Patient Advocate Manger [sic], VAMC-FNC.

26. Unknown DVA Freedom of Information/Privacy Act (FOIA/PA) Officer, VAMC-FNC.

27. Defendant Bharatkumar Thakkar, MD, VAMC-FNC.

28. Defendant VAMC Salem Virginia Fee Base Manager.

29. Defendant VA–Office on Inspector General (VAIG) Hotline, Washington, D>C.

30. Defendant Steve [Last Name Unknown (LNU)], Front Desk Cler, W-VAOPC.

31. Unknown Supervisor, VA Mid-Atlantic Health (VISN 6) 300 W. Morgan St. Suite 700 Durham, NC 27701.

32. Defendant K. Pfanzelter, Manager, VA Benefits Administration (VBA) Regional Office (VARO), Winston-Salem, NC (VBA?RO-WS).

Amended Compl. [DE-30]. The Amended Complaint alleged ten causes of action.

The same day Plaintiff filed the Amended Complaint, he also filed an "Acknowledgement

of Service" [DE-32], wherein he asserts that he

> properly served Defendants USA, et al., the attached documents:
> 1. Plaintiff's First Amended Complaint & Certification dated February 7, 2013;
> 2. Motion to Correct Caption of Case and Plaintiff's home address;
> 3. Request for Waiver of Service under the provisions of Fed.R.Civ.P. 4(d) and self-addressed stamped envelope for return of waiver . . .

by mailing the aforementioned documents to the United States Attorney for the Eastern District of

North Carolina.

On March 1, 2013, Defendant United States filed a Motion to Dismiss Amended Complaint

for Violation of Rule 8 or, in the Alternative, Motion for More Definite Statement Pursuant to Rule

12(e), and Motion to Stay Responsive Pleading Until After Entry of Intelligible Second Amended

Complaint [DE-33]. In the memorandum in support of the motion [DE-34], Assistant United States

Attorney Sharon Wilson stated she was appearing on behalf of the United States and entering a

limited appearance on behalf of all the individual Defendants for purposes of that motion. In

addition to explaining why the United States believed Plaintiff's Amended Complaint should be

dismissed for violation of Rule 8(a), Ms. Wilson also stated her views on what she perceived to be various deficiencies with Plaintiff's case, but did not file a motion to dismiss on any of those bases. In his Response [DE-35], Plaintiff opposed the United States' motion, but also stated that he was voluntarily withdrawing claims against certain defendants. The United States promptly filed a Reply [DE-36], which, *inter alia*, asked the court to enter an order confirming Plaintiff's voluntarily dismissal of certain defendants and claims.

In an order filed on June 17, 2013, the court allowed the United States' motion [DE-33] in part. Specifically, the court observed that Plaintiff's prolific use of acronyms made his Amended Complaint a "veritable alphabet soup" that had rendered the pleading "indecipherable." June 17, 2013, Order [DE-37] at 8. The court observed, however, that it was "mindful that outright dismissals of *pro se* complaints is not favored where the defects in the complaint may be curable through amendment," and accordingly, the court directed Plaintiff to file a second amended complaint, with all words written in plain English, within 21 days. The court also stated:

Given that Plaintiff has the opportunity to file an amended pleading setting forth the exact claims he alleges, the court declines to make any ruling on which claims and defendants remain in this action after Plaintiff's statement that he 'withdraws' certain party defendants.' **Plaintiff is instead instructed to ensure that the amended complaint he files reflects the claims he currently is pursuing in this action**.

June 17, 2012, Order [DE-27] at 8-9. The court also noted that it was not making any rulings as to the many observations made by Ms. Wilson, given that no motion was filed with regard to the perceived deficiencies.

Two days later, Assistant United States Attorney Joshua B. Royster filed a Notice of Substitution of Counsel for Defendants [DE-38]. Plaintiff thereafter filed his Second Amended Complaint [DE-39], entitled:

7

Plaintiff's Second Amended Complaint for Declaratory, Injunctive, and Damage Relief under the Provisions of the United States (U.S.) Supreme Court's (SCOUS) Feres Doctrine Rule of Law–Incident to U.S. Military Service Holding and Its No-Fault-Non-Adversarial Second Rationale Mandate (Feres Doctrine Mandate)

&

Federal Question Challenges to Prevent the Executive Branch and Its Department of Justice (DOJ) From Covering-Up Crimes Committed by the Department of Veterans Affairs (DVA) Against U.S. Veterans and Families in Direct Violations of the Feres Doctrine Exemption to the First and Fifth Amendments to the U.S. Constitution (U.S. Const.) and the Federal Tort Claims Act (FTCA) and for Other Public Trust Related Purposes as Compiled Over the Past 20 ½ the Veteran Has Been Denied Equal Justice Under the Laws of the DVA; As With Millions of Other U.S. Veterans Similarly Situated Under the Obama-DVA

Therein, he named as Defendants:

13.    Defendant United States of America (USA), and its subordinate agency, agents, officials of the DVA–Washington D.C., and the DVA-North Carolina (NC) led and administered by Barack H. Obama, II, current President of the United States and his Secretary of DVA Eric Shineski.

14.    Defendant VA Medical Center Fayetteville, NC Director Elizabeth Goolsby, officially and in her individual capacity.

15.    Defendant Sharon F. Troyon, DVA-Outpatient Clinic, Wilmington, NC, officially and in her individual capacity.

16.    Defendant Charles E. Best, Jr., DVA-Outpatient Clinic, Wilmington, NC, officially and in his individual capacity.

17.    Defendant Warren v. Hsu, MD., DVA-Outpatient Clinic, Wilmington, NC, officially and in his individual capacity.

18. Defendant Bharatkumar Thakkar, MD., VA Medical Center Fayetteville, NC.

19.    Defendant K. Pfanzelter, Manager, VA Benefits Administration (VBA) Regional Office (RO) Winston-Salem, NC.

20.    Defendant Sharon C. Wilson, Assistant U.S. Attorney for the Southern District of North Carolina.

Second Amend. Compl. [DE-39]. He asserted seven causes of action,[1] and asked for 28-enumerated

---

[1] The causes of action were denominated as follows:

(1) The *Feres* Doctrine Mandate Federal Question; (2) Defendant Department of Justice (DOJ) Defamaning (sic) the Veteran's Character & Lack of Candor Toward the Tribunal; (3) Judicial Declaration that Plaintiff Suffer no Pre-Military Medical Condition; (4) Equitable Tolling; (5) The Troyon-Incident and Medical Malpractice, Neglect, Abandonment & DVA High Official Unlawful Reprisal, and (6) North Carolina State Law Medical Malpractice & Intentional Infliction of Emotional Distress.

requests for relief.

Thereafter, the United States filed a "Certification of Scope of Employment and Substitution" [DE-40], pursuant to the Westfall Act, 28 U.S.C. § 2679(d), certifying that defendants Sharon F. Troyon, Charles E. Best, Warren V. Hsu, M.D., Baratkumar Thakka M.D., and Sharon C. Wilson were acting within the scope of their employment for the United States at the time of the incidents alleged in the Second Amended Complaint, and stating that the United States was substituted as the party defendant as to Plaintiff's tort claims. The United States also filed a Motion to Dismiss, wherein it argued that Plaintiff's tort claims against the United States must be dismissed pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction but specifically stated that the motion to dismiss was not intended to be a response on the behalf of any individual defendants, against whom Plaintiff had asserted claims pursuant to *Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).

Plaintiff opposed the motion to dismiss, and also filed a Motion for Temporary Restraining Order [DE-47], wherein he asserted that on September 4, 2013, he was approached by a Special Agent with the Department of Veterans Affairs, who allegedly informed Plaintiff that he "committed fraud by filing for 'Improved Pension' in 2005 and that an 'indictment' was coming [Plaintiff's] way because [he] play[s] baseball once or twice a week." Mot. for TRO [DE-47] at. 2. Plaintiff asked the court to "issue a restraining order preventing Defendant Obama and his DOJ and DVA from bringing a malicious prosecution against me while this case is pending before the Court." *Id.* at 6. The court denied Plaintiff's Motion in an order filed on September 17, 2013 [DE-48], explaining that the court was without authority to award the relief requested by Plaintiff.

Plaintiff then filed a "Motion for Rule 15 of the Court to Modify the Second Amended

9

Complaint to Re-Enjoin Defendant Department of Veterans' Affairs Inspector General (DVA-IG) to Incorporate an Additional Claim for First Amendment Retaliation Arising from the September 4, 2013, DVA-IG Agent Kirby Serious Act of Intimidation, Harassment, and Threat of Malicious Prosecution Further Giving Rise to Additional Deasy-Post Traumatic Stress Disorder (PTSD) & Truman-Intentional Infliction of Emotional Distress Claims" [DE-49]. Plaintiff did not submit a proposed amended pleading with his motion. Plaintiff later filed, on January 15, 2014, a "Notice of Additional Newly Discovered Evidence of First Amendment Reprisal in Further Support of ll Case of First Impression-Federal Question Challenges and Requests for Damage Relief under the Feres Doctrine-Rule of Law-Second-Rationale Philosophy & Request for Expedited Cushman-Due Process Hearing" [DE-55]. It appeared from the motion that Plaintiff received notice that the VA may terminate his improved pension financial benefits, which he believed was further support for a First Amendment reprisal claim.

In an order filed on March 17, 2014, the court found that the United States was properly substituted as a party defendant as to Plaintiff's tort claims as to certain defendants, and allowed the United States' motion to dismiss the tort claims against it. The court also determined that a number of other claims must be dismissed for lack of subject matter jurisdiction, because the court lacks jurisdiction to hear claims that are, in substance, nothing more than a challenge to veterans benefits determinations." March 17, 2014, Order [DE-56] at 20-3. The court determined, however, that to the extent Plaintiff was making facial challenge to 38 U.S.C. § 511, his claim survived. The court also allowed Plaintiff's motion to amend [DE-49] in part, to the extent he was alleging that his First Amendment rights were violated by an interaction with an Agent Kirby with Department of Veterans Affairs who allegedly informed Plaintiff that an indictment was 'coming his way.'" *Id.* As to his

allegations regarding the termination of his benefits, the court stated: "For the reasons already discussed, this court does not have jurisdiction over claims challenging veterans benefits determinations, even if Plaintiff alleges that a constitutional right was violated in the course of making the determination." *Id.* The court specifically directed Plaintiff to "**ensure that his amended pleading complies with Rule 8(a) of the Federal Rules of Civil Procedure**." *Id.* at 25. In a footnote, the court observed:

> The Second Amended Complaint spans 72 pages and consists of 56 "paragraphs." Many of the "paragraphs" within the pleading span multiple pages. *See, e.g.,* Second Amended Compl. [DE-39] ¶¶ 32, 33. The pleading begins with an "Introduction" that consists of 24 pages. The document also is peppered with 65 footnotes. The pleading, as a whole, is rambling and repetitive, and contains large sections of discourse that do not appear to be pertinent to Plaintiff's claims for relief.

*Id.* at 25 n.8.

Plaintiff then filed an Emergency Motion for Temporary Injunction Order to Prevent Termination of Plaintiff's Improved Pension (IP) Benefits [DE-57], stating that he received notice that the VA was in fact terminating his improved pension benefits on the basis of fraud. The court denied the motion [DE-58] because Plaintiff could not show a likelihood of success on the merits of his claim, because the court does not have jurisdiction to hear challenges to individual benefit determinations.

Plaintiff then filed his Third Amended Complaint [DE-59]. Despite the fact that pages 2 through 9 (encompassing, respectively, paragraphs 1 through 5) of the pleading were omitted by Plaintiff, the complaint as filed still spans 35 pages. He names as Defendants (1) the United States; (2) Barack Obama; (3) Eric Shineski, Secretary of the Department of Veterans Affairs; (4) Eric Holder, United States Attorney Genera; (5) Department of Justice; (6) Richard J. Griffin, Acting

11

Inspector General for the Department of Veterans Affairs; (7) E.J. McQuade, Veterans Benefits Administration Manager, Regional Office, Winston-Salem, North Carolina: (8) Elizabeth Goolsby, Director of the VA Medical Center, Fayetteville, North Carolina; and (9) Bobby J. Kirby, Special Agent, Office of the Inspector General. Plaintiff alleges his claims against Defendants Obama, Holder, Shineski and Griffin in their official capacities. He alleges his claims against Defendants Goolsby, Kirby, and McQuade in both their official and individual capacities. He asserts five causes of actions, denominated as follows: (1) "Plaintiff's Scous's Feres Doctrine's Second-Rationale Mandate (SCOUS-FDM) First Amendment Retaliation Claim;" (2) "Plaintiff's Equitable Tolling and Federal Relation Back Doctrine Claims;" (3) "Negligent & Intentional Infliction of Emotional Distress;" (4) "Plaintiff's Request for Damage Relief Under the Provisions of the Deasy & Truman Precedents to Remedy Twenty-Years of Bona Fide and Credible Human and Civil Rights Abuses Overtly Initiated by Defendant DVA-BVA Due to the Unconstitutional 38 USC 511—Abomination and its Unconstitutional Cover Up of the Plaintiff's Clinton-Military-Reprisal (Crime) Victim Status Directly Undertaken by Defendants Kirby & McQuade to Shiled [sic] High Official Obama-DVA Corruption;" and (5) "The Murder Inc. Theory & DVA-BVA 38 USC § 511 Constitutional Challenge." He seeks damages, and posits eight requests for declaratory relief.

The United States timely moved to dismiss [DE-70] the Third Amended Complaint on the basis of lack of subject matter jurisdiction and failure to state a claim. Plaintiff opposed the motion, and later filed the instant motion to amend the third complaint [DE-76]. The United States opposes the motion to amend.

On March 27, 2015, as the court was preparing to issue an order on the Motion to Dismiss and Motion to Amend, Plaintiff filed the Motion to Compel.

## II. STANDARD OF REVIEW

The existence of subject matter jurisdiction is a threshold issue which must be addressed before the court can reach the merits of the case. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 95-102 (1998); *accord Jones v. Am. Postal Workers Union*, 192 F.3d 417, 422 (4th Cir. 1999). It is a fundamental rule that a court has "jurisdiction to determine [its] jurisdiction." *Greenwich Fin. Servs. Distressed Mortg. Fund 3 LLC v. Countrywide Fin. Corp.*, 603 F.3d 23, 27 (2d Cir. 2010). Subject matter jurisdiction is both a constitutional and statutory requirement which restricts federal judicial power to a limited set of cases and controversies. Thus, "no action of the parties can confer subject-matter jurisdiction upon a federal court." *Ins. Corp. of Ir. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982). A defendant may challenge subject matter jurisdiction pursuant to Rule 12(b)(1) facially or factually. *See Wollman v. Geren*, 603 F. Supp. 2d 879, 882 (E.D. Va. 2009). If a defendant presents a facial challenge by arguing the complaint fails to allege facts upon which subject matter jurisdiction can be based, all facts alleged in the complaint are presumed true. *See Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). Alternatively, if a defendant presents a factual challenge by arguing that jurisdictional facts alleged in the complaint are untrue, the court may consider extrinsic information beyond the complaint to determine whether subject matter jurisdiction exists. *See Kerns v. United States*, 585 F.3d 187, 192-93 (4th Cir. 2009). In both situations, the burden rests with the party seeking federal jurisdiction to prove that federal jurisdiction is proper. *See Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991). A district court should grant a Rule 12(b)(1) motion to dismiss "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Richmond*, 945 F.2d at 768 (citation omitted); *see Evans v. B.F. Perkins Co.*, 166 F.3d 642,

13

647 (4th Cir. 1999).

On a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a court must determine the legal sufficiency of the complaint. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In so doing, the court assumes the truth of all facts alleged in the complaint and the existence of any fact that can be proved, consistent with the complaint's allegations. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). However, the "'[f]actual allegations must be enough to raise a right to relief above the speculative level' and have 'enough facts to state a claim to relief that is plausible on its face.'" *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 616 n.26 (4th Cir. 2009) (citing *Twombly*, 550 U.S. at 555 (2007)). Moreover, although the court draws all reasonable factual inferences in a plaintiff's favor, the court is not obligated to accept a complaint's legal conclusions drawn from the facts. *Iqbal*, 129 S.Ct. at 1949-50. Nor must the court accept as true "unwarranted inferences, unreasonable conclusions, or arguments." *Giarratano v. Johnson*, 521 F.3d 298, 301-02 (4th Cir. 2008) (quotations omitted).

## III. DISCUSSION

### A. Motion to Dismiss

The United States moves to dismiss the entirety of Plaintiff's Third Amended Complaint, arguing that Plaintiff's claims against the United States, the Department of Justice, and the individual defendants in their official capacities are barred by sovereign immunity. The United States also moves to dismiss the tort claims as being barred by sovereign immunity. Finally, the United States argues that the remainder of the claims should be dismissed as violating Rule 8 of the Federal Rules of Civil Procedure, or for failure to state a plausible claim of relief.

### 1. Sovereign Immunity

14

Absent a waiver, sovereign immunity shields the United States from suit. *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994). This sovereign immunity extends to federal agencies and government officials sued in their official capacity. *Id.* Sovereign immunity is jurisdictional in nature, and "the 'terms of [the United States'] consent to be sued in any court define that court's jurisdiction to entertain the suit.'" *Id.* (quoting *United States v. Sherwood*, 312 U.S. 584, 586 (1941)). "[A] waiver of the Federal Government's sovereign immunity must be unequivocally expressed in statutory text." *Lane v. Pena*, 518 U.S. 187, 192 (1996).

Here, Plaintiff does not expressly allege a waiver of sovereign immunity. Instead, he alleges the following as to jurisdiction:

> 7. **Jurisdiction**. This action is brought pursuant to the *United States Constitution, Bill of Rights, Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388 (1971) (hereinafter "*Bivens*"); *Veterans for Common Sense v. Shineski*, 678 F.3d 1013, 1020 (9th Circ. 2012); the *Declaratory Judgment Act*, 28 U.S.C. § 2201 and the federal *Racketeer Influenced and Corruption Organizations Act (RICO)*, a set of laws (18 U.S.C.A. § 1961 et seq. [1970]), primarily 18 U.S. Code § 1964 – civil remedies (*Civil-RICO Act*). Additionally jurisdiction is properly set with respect to all state and federal case law precedents for common law claims of negligent and intetional infliction of emotional distress.

Third Amended Compl. [DE-59] at 2-3.[2] None of these authorities provide an express waiver of immunity as to Plaintiff's claims for damages against the United States, its agencies, or its officials in their official capacity. The Constitution, including the Bill of Rights, does not contain any express waiver of immunity. Nor does the RICO statute. *See Jones v. Nat'l Communication & Surveillance Networks*, 409 F. Supp.2d 456, 466 (S.D.N.Y. 2006) ("Neither as the U.S. government waived its immunity from claims under RICO."); *Peia v. United States*, 152 F. Supp. 2d 226, 234 (D. Conn.

---

[2] All citations to Plaintiff's Third Amended Complaint are to pages as numbered by the court's CM/ECF system.

2001) ("The United States is not considered a person under RICO and therefore as a matter of law is not a proper party to Plaintiff's RICO claim."). Moreover, although the Supreme Court has recognized a *Bivens* action—a judicially created damages remedy designed to vindicate violations of constitutional rights by federal actors—as the federal counterpart of an action under 42 U.S.C. § 1983, *see Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 395-97 (1971), such actions are not actionable against the United States, federal agencies, or federal officials acting in their official capacity. *Meyer*, 510 U.S. at 475, 484-86; *see also Scinto v. Federal Bureau of Prisons*, 608 F. Supp. 2d 4, 8 (D.D.C. 2009) ("*Bivens* by its very nature is a private damages action against individual federal employees for violating a citizen's constitutional rights. . . . It can never be a suit against the sovereign and is not a waiver of sovereign immunity for actions against the United States."). For the foregoing reasons, to the extent that Plaintiff seeks money damages against the United States, its agencies, and the individual defendants in their official capacities, the claims are DISMISSED on the basis of sovereign immunity.

Additionally, Plaintiff's third claim for relief, alleging negligent and intentional infliction of emotional distress, is subsumed by the Federal Tort Claims Act, 28 U.S.C. § 2671 *et seq.*, which provides an exclusive remedy for all tort suits against the Government and its employees who commit tortious acts in the course of their employment. *See* 28 U.S.C. § 2679(b)(1) ("The remedy against the United States . . . for injury or loss of property or personal injury or death arising or resulting from the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment is exclusive of any other civil action or proceeding for money damages . . . ."); *see also United States v. Smith*, 499 U.S. 160, 166 (1991) ("[T]he FTCA [is] the exclusive mode of recovery for the tort of a Government employee even when

16

the FTCA itself precludes Government liability."); *Ross v. Fed. Bureau of Alcohol, Tobacco, & Firearms*, 807 F. Supp. 2d 362, 369-70 (D. Md. 2011) (dismissing various state tort claims asserted against the ATF, the FBI, and unknown officials of both agencies because "all of the tort claims are subsumed" by the FTCA). The United States is the only proper party under the FTCA, and Plaintiff's tort claims against it are also barred by the doctrine of sovereign immunity.

This is so because the FTCA acts a limited waiver of sovereign immunity for tort claims against the United States, but it "permits suit only on terms and conditions strictly proscribed by Congress." *Gould v. United States Dep't of Health & Human Servs.*, 905 F.2d 738, 741 (4th Cir. 1990). One of those conditions is the exhaustion of administrative remedies. The FTCA specifically provides:

> An action shall not be instituted upon a claim against the United States for money damages for injury or loss . . . caused by negligent or wrongful act or omission of any employee of the Government while acting within the scope of his or her office or employment, unless the claimant shall have first presented the claim to the appropriate federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail. The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant at any time thereafter, be deemed a final denial of the claim for purposes of this section.

28 U.S.C. § 2675(a). The administrative claim must be presented to the appropriate federal agency within two years of the incident giving rise to the claim, and any subsequent court action must be commenced within six months after the date the agency mails the notice of final denial. *See* 28 U.S.C. § 2401(b). "[T]he requirement of filing an administrative claim is jurisdictional and may not be waived." *Henderson v. United States*, 785 F.2d 121, 123 (4th Cir. 1986). Plaintiff does not allege exhaustion of administrative remedies as to his negligent/intentional infliction of emotional distress claim, despite being on notice from this court's previous orders to do so.

17

For the foregoing reasons, Plaintiff's third claim for relief, as well as any other claim through which he seeks money damages against the United States, its agencies, and the individual defendants in their official capacities, are DISMISSED on the basis of sovereign immunity.

## 2. Lack of jurisdiction

As this court has explained in its March 17, 2014 Order [DE-56], this court is without jurisdiction to hear claims that challenge underlying benefit decisions made by the DVA. *See* March 17, 2014 Order [DE-56] at 19-22. Although Plaintiff purports to assert a facial challenge to 38 U.S.C. § 511—which the court has determined it does have the jurisdiction to consider—some of Plaintiff's requests for judicial declarations and other forms of equitable relief in the Third Amended Complaint are, at bottom, challenging the underlying benefits determinations made by the DVA, Accordingly, for the same reasons this court stated in its March 17, 2014, Order, the court determines that it lacks jurisdiction to consider Plaintiff's requests for (1) "a *judicial declaration* be considered wherein the DVA-BVA violated the Plaintiff's *Feres doctrine "no-fault, non-adversarial" holding* in violation of the *Cushman*-precedent as far back as January 14, 1994[;]" and (2) "a *judicial declaration* be considered to redress and remedy the fact that the Clinton Navy Department deprived the plaintiff of his *SCOUS—Feres Doctrine Rule of Law second-rationale* rights and entitlements to a *fully-developed medical record* at the time of his January 13, 1994 involuntary honorable discharge."

Similarly, the court concludes that it lacks jurisdiction to consider Plaintiff's *Bivens* claims against Defendant E.J. McQuade and Elizabeth Goolsby, because those claims are essentially challenging benefits decisions. *See* Third Amended Compl. [DE-59] at p. 12 (asserting that his claim against McQuade arises from McQuade's decision to terminate his benefits); p. 19 n.19

18

(alleging Goolsby is responsible for the alleged failure of the DVA to provide Pliantiff with mental health services); *see also Zuspann v. Brown*, 60 F.3d 1156, 1159-60 (5th Cir. 1995) (refusing to allow a *Bivens* action due to the Veterans Judicial Review Act's comprehensive remedial structure and because plaintiff was merely "complaining about a denial of benefits"); *Hicks v. Small*, 69 F.3d 967, 969 (9th Cir. 1995) (determining that a *Bivens* action against an individual VA employee was inappropriate because of the comprehensive remedial structure of the Veterans Judicial Review Act); *Sugrue v. Derwinski*, 26 F.3d 8, 10 (2d Cir. 1994) (refusing to recognize a *Bivens* action for alleged due process violations for failure to VA doctors to maintain medical records with accuracy or completeness). Consequently, Plaintiff's *Bivens* claims against McQuade and Goolsby are DISMISSED.

### 3.    Failure to State a Claim

Although the Third Amended Complaint is rambling, repetitive, and so extraordinarily difficult to understand that it could be subject to dismissal under Rule 8(a), the court has endeavored to discern what claims—over which it may properly assert jurisdiction—Plaintiff has attempted to assert. In so doing, the court concludes that any claims asserted by Plaintiff are subject to dismissal under Rule 12(b)(6) for failure to state a claim.

### a.    Facial challenge to 38 U.S.C. § 511

Plaintiff purports to assert a facial challenge to 38 U.S.C. § 511. In doing so, he faces an uphill battle. "Under *United States v. Salerno*, 481 U.S. 739 . . . (1987), a plaintiff can only succeed in a facial challenge by 'establish[ing] that no set of circumstances exists under which the Act would be valid," i.e., that the law is unconstitutional in all its applications." *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 449 (2008) (quoting *Salerno*, 481 U.S. at 745).

19

As this court previously explained in the March 17, 2014, Order, under 38 U.S.C. § 511(a), the Secretary of Veterans Affairs "shall decide all questions of law and fact necessary to a decision by the Secretary under a law that affects the provision of benefits by the Secretary to veterans," and review of the Secretary's decisions "may not be reviewed by any other official or by any court." An appeal from the Secretary's decision lies with the Board of Veterans' Appeals ("BVA"). 38 U.S.C. § 7104(a); 38 C.FR. Section 20.10(a). The BVA decision may be appealed by the claimant to the Court of Appeals for Veterans Claims, pursuant to 38 U.S.C. section 7252(a), and then under certain circumstances, to the United States for the Federal Circuit, pursuant to 38 U.S.C. sections 7252(c), 7292.

Based on scattered references in his Third Amended Complaint, the court is assuming that Plaintiff contends that the system of review in § 511 infringes upon rights guaranteed by the First, Fourth and Fifth Amendments. The court agrees with the Government that the decision in *Peavey v. Holder*, 657 F. Supp. 2d 180 (D.D.C. 2009) is instructive, at least to the extent Plaintiff argues that § 511 violates his First and Fifth Amendment rights. In *Peavey*, the plaintiff asserted a facial challenge to § 511, contending that it conflicted with rights guaranteed under the First, Fifth, Ninth, and Fourteenth Amendments. The District Court for the District of Columbia allowed the Government's motion to dismiss as to the facial challenge, finding that the plaintiff failed to state a claim. Specifically, the court noted:

> Section 511's limit on judicial review does not restrict Peavey's First Amendment right of free speech or abridge his right to seek redress of his grievances. It does not preclude Peavey from expressing himself or going to court; rather, § 511 directs him to the proper judicial fora. Peavey also has failed to show how § 511's process of review violates the Fifth Amendment. He has been given notice of the VA's decisions regarding his benefits and can seek review of the decisions in two successive courts—the United States Court of Veterans Appeals and the United States Court of

20

Case 7:12-cv-00073-F   Document 79   Filed 03/30/15   Page 20 of 27

Appeals for the Federal Circuit. First, Fourth, Fifth (due process and equal protection.

*Id.* at 186 (footnote omitted). The court finds the same reason to be applicable to Plaintiff's claim, to the extent that he argues that § 511 violates his First Amendment rights or his due process rights under the Fifth Amendment. Moreover, the allegations in the Third Amended Complaint fail to show how § 511's limit on judicial review infringes on "[t]he right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures" or violates the mandate that warrants be issued only upon probable cause. *See* U.S. Const. amend. IV. Nor do Plaintiff's allegations indicate how § 511 violates the right to equal protection. *See Bradley v. Nicholson*, 181 F. App'x 989, 994 (Fed. Cir. 2006) (concluding that the review procedure under § 511 is not discriminatory treatment under the Constitution).

Consequently, Plaintiff's facial challenge to § 511 is DISMISSED for failure to state a claim.

b. *Bivens* claims against Kirby

Trueman's remaining *Bivens* claim is asserted against Defendant Kirby, a Special Agent in the Office of the Inspector General for the VA. Trueman alleges that Kirby informed him that he had committed fraud by filing for an Improved Pension in 2005 and that an indictment was coming Trueman's way because he plays baseball once or twice a week. Trueman alleges that Kirby violated his First Amendment rights.

The Supreme Court has recognized that "[o]fficial reprisal for protected speech 'offends the Constitution [because] it threatens to inhibit exercise of the protected right,' . . ., and the law is settled that as a general matter the First Amendment prohibits government officials from subjecting an

21

individual to retaliatory actions, including criminal prosecutions, for speaking out . . . ." *Hartman v. Moore*, 547 U.S. 250, 256 (2006) (quoting *Crawford–El v. Britton,* 523 U.S. 574, 588 n. 10 and 592 (1998) and citing *Perry v. Sindermann,* 408 U.S. 593, 597 (1972) (noting that the government may not punish a person or deprive him of a benefit on the basis of his "constitutionally protected speech")). "When the vengeful officer is federal, he is subject to an action for damages on the authority of *Bivens*." *Id.*

A First Amendment retaliation claim requires a plaintiff to establish three elements: (1) "that his or her speech was protected;" (2) "that the defendants' alleged retaliatory action adversely affected the plaintiff's constitutionally protected speech;" and (3) "that a causal relationship exists between [the plaintiff's] speech and the defendant's retaliatory action." *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685-86 (4th Cir. 2000). Here, the court assumes that Plaintiff's speech–via his complaints to the Inspector General's office and this lawsuit—constitute protected speech. The court also recognizes that a criminal prosecution in retaliation for protected speech would provide Plaintiff with a plausible First Amendment claim. *See Hartman*, 611 F.3d at 261-62 (recognizing that a plaintiff may bring a claim against a non-prosecutor for retaliatory inducement to prosecute). Here, however, the record makes clear that there has been no prosecution. At most, Plaintiff could allege that Kirby conducted a retaliatory investigation against him.

The Fourth Circuit has not determined whether an investigation can give rise to a First Amendment retaliation claim. The Supreme Court in *Hartman* mentioned—but pointedly did not resolve—the issue: "No one here claims that simply conducting a retaliatory investigation with a view to promote a prosecution is a constitutional tort . . . . Whether the expense or other adverse consequences of a retaliatory investigation would ever justify recognizing such an investigation as

22

a distinct constitutional violation is not before us." 547 U.S. at 262 n.9. Since Plaintiff filed the Third Amended Complaint, this court has become aware that federal courts in other circuits have determined that a retaliatory investigation does not form the basis of a constitutional claim. *See, e.g., Rehberg v. Paulk,* 611 F.3d 828, 850 n.24 (11th Cir. 2010) ("The initiation of a criminal investigation in and of itself does not implicate a federal constitutional right."); *Yazid–Mazin v. McCormick,* 2013 WL 5758716, at *4 n.5 (D.N.J. Oct. 24, 2013) ("Simply conducting a retaliatory investigation with a view to promote a prosecution does not state a claim under § 1983."); *Roark v. United States,* 2013 WL 1071778, at *5 (D. Or. Mar. 12, 2013) (denying a motion to amend complaint because "plaintiff cannot evince the existence of a constitutional tort based on a retaliatory investigation") (citing *Rehberg,* 611 F.3d at 850-51). The court agrees with these other courts that conducting a retaliatory investigation does not, in and of itself, form the basis of a constitutional tort. Accordingly, because there is no prosecution pending against Plaintiff, and because conducting an investigation does not implicate a constitutional tort, Plaintiff's *Bivens* claim against Defendant Kirby for retaliation in violation of the First Amendment is DISMISSED for failure to state a claim.

c.    RICO Claim

Plaintiff also asserts in various portions of the Third Amended Complaint that he is seeking civil damages under the RICO statutes. As the court already has discussed above, he cannot assert this claim against the United States, its agencies, or its officers in their official capacity. To the extent that Plaintiff is attempting to assert it against any of the individual defendants in their personal capacities, he has failed to state a claim.

RICO "does not cover all instances of wrongdoing. Rather, it is a unique cause of action that is concerned with eradicating organized, long-term, habitual criminal activity." *US Airline Pilots*

23

*Ass'n v. AWAPPA, LLC*, 615 F.3d 312, 317 (4th Cir. 2010) (quoting *Gamboa v. Velez*, 457 F.3d 703, 705 (7th Cir. 2006)). The penalties authorized under RICO have been described as "drastic," and serve to underscore that RICO is "primarily designed to provide society with a powerful response to the dangers of organized crime." *Id.* (citing *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 233, 245 (1989)). Although 18 U.S.C. § 1962 enumerates four distinct RICO violations, elements common to all subsections are: (1) person; (2) predicate acts (i.e., racketeering activity); (3) a pattern of such acts; and (4) an enterprise. 18 U.S.C. § 1962; *see St. Germain v. Howard*, 556 F.3d 261, 263 (5th Cir. 2009) (stating claims under RICO share the common elements of "(1) a person who engages in (2) a pattern of racketeering activity, (3) connected to the acquisition, establishment, conduct, or control of an enterprise"); *Smithfield Foods, Inc. v. United Food & Commer. Workers Int'l Union*, 633 F. Supp. 2d 214, 222 (E.D. Va. 2008) (noting all four RICO counts share common elements). Here, Plaintiffs' allegations fail to indicate that any of the Defendants engaged in a pattern of racketeering acts, nor do the allegations show an enterprise. *See* 18 U.S.C. § 1961(1) (defining "racketeering activity"); § 1961(5) (defining "pattern of racketeering activity" as including "at least two [predicate] acts of racketeering activity"). Accordingly, the court finds that Plaintiff has failed to state a RICO claim against any individual defendant.

d.      Possible additional claims

Plaintiff also requests several "judicial declarations." The court finds that none of these requests for judicial declarations state a claim, and they are all subject to dismissal under Rule 12(b)(6). Accordingly, the entirety of Plaintiff's claims asserted in the Third Amended Complaint are DISMISSED.

**B.      Motion to Amend**

24

Plaintiff moves, again, to file an amended complaint. He, again, has not filed a proposed amended complaint with his motion to amend. Rule 15(a) of the Federal Rules of Civil Procedure governs amendments to the pleadings. Under the Rule, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). District courts should liberally allow amendments:

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be "freely given."

*Foman v. Davis*, 371 U.S. 178, 182 (1962). However, leave to amend is "not to be granted automatically," *Deasy v. Hill*, 833 F.2d 38, 40 (4th Cir. 1987), and a district court has discretion to deny amendment so long as the court does not "outright refuse 'to grant the leave without any justifying reason.'" *Equal Rights Ctr. v. Niles Bolton Assocs.*, 602 F.3d 597, 603 (4th Cir. 2010) (quoting *Foman*, 371 U.S. at 182).

Plaintiff seeks to amend his complaint to "incorporate new federal question claims and challenges . . . ." Motion to Amend [DE-76] at 2. Like most of Plaintiff's filings, the motion to amend is long, rambling, and difficult to follow. Plaintiff incorporates large portions of his correspondence with various officials. The court does not discern that any of the "new" allegations in the motion would support any of the claims Plaintiff has attempted to assert in this action. Accordingly, his attempt to amend the complaint must be denied on the basis of futility.. *See, e.g.*, *Perkins v. United States*, 55 F.3d 910, 917 (4th Cir. 1995) (explaining amendment is futile if,

assuming amendment is allowed, complaint will still not survive a motion to dismiss). Consequently, the motion to amend [DE-76] is DENIED.

## C. Motion to Compel

Plaintiff's motion to compel—as best the court can interpret it—appears to be premised, in part, on the November 20, 2014 Decision by the Board of Veterans' Appeals which reopened some of Plaintiff's claims for VA benefits and granted him "service connection" for headaches and an acquired psychiatric disorder. *See* Nov. 20, 2014 BVA Order [DE-78-1]. He asks the court to order the VA to "release all Plaintiff's unlawfully withheld *Board* recognized back pay and entitlements consistent with the findings [in the November 20, 2014 BVA Order] to put an end to the visou cycle of appeal after appeal which is the asserted primary cause and effect for 22-Veteran murder per day." Motion to Compel [DE-78] at 8. He seeks to make this a "RICO Class Action." He also asserts that "on March 17, 2015 Defendant VBA et al provided affirmative and verifiable wrongful acts and omissions in stealing \$69,212.65 of the Plaintiff's *Constitution/Cushman* property rights under te *SCOUS-FDM* without ever affording the Plaintiff a right to be heard against the criminal-false charges . . . ." Motion to Compel [DE-78] at 13. This latter assertion appears to be relate to his disagreement with how the VA Regional Office in Winston-Salem, North Carolina is interpreting and putting into effect the November 20, 2014 BVA Order. *Id.* at 16 n.21 ("Defendant in manipulating 'effective dates' of the Plaintiff's benefits has actually resulted in him being cheated out of approximately \$660,000.00 at this time."); *Id.* at 17-18 (arguing that the RICO act applies "in the wake of the Defendant DVA-VBA extortion of over \$660,000.00 of the Plaintiff *SCOUS-FDM*-financial entitlements of March 17, 2015 when said defendant notified the Plaintiff they would not

26

provide him with a due process hearing to oppose the unlawful deb collection in the amount of $69,212.65 that has actually been recouped to cover up the *Kirby/McQuade Incidents.*").

Plaintiff's Motion to Compel does not alter the court's findings as to any of the claims he has attempted to assert in this lawsuit. The allegations do not show a "pattern" of racketeering activity, necessary to support a RICO Act claim. Nor does the additional information he puts before the court support a First Amendment retaliation claim, or any other claim over which this court may assert jurisdiction. Because there are no cognizable claims asserted in this action, Plaintiff's request for a hearing is DENIED.

## IV. CONCLUSION

For the foregoing reasons,, the Motion to Dismiss [DE-70] is ALLOWED, the Motion to Amend [DE-76] is DENIED, the Motion to Compel [DE-78] is DENIED, and Plaintiff's claims are DISMISSED. The Clerk of Court is DIRECTED to close this case.

SO ORDERED.     This the $3°$ day of March, 2015.

_____

James C. Fox
Senior United States District Judge